UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERIC Y.,

                          Plaintiff,                    **DECISION AND ORDER**

                 v.
                                                        1:24-CV-00192 EAW
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____


## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Eric Y. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 4; Dkt. 6). For the reasons discussed below, the Commissioner's motion for judgment on the pleadings (Dkt. 6) is granted, and Plaintiff's motion (Dkt. 4) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on March 16, 2021. (Dkt. 3 at 107, 118).[1]  In his application, Plaintiff alleged disability beginning February 28, 2015, due to "Anxiety; Bipolar; Diabetic; Sleep Apnea; Lower back 2 discs; obesity; stroke about 8 years ago." (*Id.* at 99-110, 108-09).  Plaintiff's application was initially denied on May 13, 2021.  (*Id.* at 119-24).  A telephone hearing was held before administrative law judge ("ALJ") Joani Sedaca on September 14, 2022.  (*Id.* at 42-98).  On January 18, 2023, the ALJ issued an unfavorable decision.  (*Id.* at 23-38).  Plaintiff requested Appeals Council review; his request was denied on January 9, 2024, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 4-9).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## **DISCUSSION**

## I.    **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2019. (Dkt. 3 at 28). At step one, the ALJ determined that Plaintiff had not engaged in substantial

gainful work activity from the amended alleged onset date of June 14, 2018[2], through the date last insured of December 31, 2019. (*Id*. at 29).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "diabetes mellitus, diabetic peripheral neuropathy and morbid obesity." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of spondylosis in the lumbar spine, hypertension, obstructive sleep apnea, hyperlipidemia, diabetic retinopathy, degenerative changes and tenosynovitis of the right shoulder, anxiety disorder, depressive disorder, and bipolar disorder, were non-severe. (*Id*. at 29-31).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 31). The ALJ particularly considered the criteria of Listings 9.00(B)(5) and 11.14 in reaching her conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff:

> could occasionally climb, stoop, crouch, kneel and balance but could never crawl. The claimant would be "on task" at least ninety percent of the time in an eight-hour workday.

(*Id.* at 31-32). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 36).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there

---

[2]    At the administrative hearing, Plaintiff amended the alleged onset date from February 28, 2015, to June 14, 2018. (*See* Dkt. 3 at 26).

were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of sorter, assembler, and price marker. (*Id.* at 37-38). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act, between June 14, 2018, the amended alleged onset date, through December 31, 2019, the date last insured. (*Id.* at 38).

## II.    The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) despite discounting the opinions offered by the non-examining agency medical consultants and conceding that they did not have a complete record for review, and rejecting the treating opinion from Jodi Kottwitz, NP, the ALJ did not attempt to obtain a retroactive opinion of Plaintiff's functioning, and determined the RFC based on her own lay judgment, and (2) the ALJ's off-task limitation is unexplained and unsupported. (Dkt. 4-1 at 1, 5-12). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.    Assessment of the RFC

Plaintiff first argues that the ALJ erred when she rejected medical opinions in the record and assessed an RFC based on her lay judgment. (Dkt. 4-1 at 5). In response, the Commissioner argues that the ALJ was responsible for assessing the RFC, and that the RFC is supported by substantial evidence. (Dkt. 6-1 at 7, 10).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not

"perfectly correspond with any of the opinions of medical sources cited in his decision," *id*., an ALJ is not a medical professional, and therefore she "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).

However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).  In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

Plaintiff's argument with respect to the RFC is two-fold.  First, Plaintiff argues that the ALJ erred by rejecting the opinions offered by Dr. J. Randall, Dr. S. Sonthineni, and Dr. R. Dickerson, the state agency medical consultants, as well as the opinion offered by NP Kottwitz, Plaintiff's treating nurse practitioner.  Plaintiff argues that by rejecting all the

opinion evidence, the ALJ must have assessed an RFC based on her own lay judgment. (*See* Dkt. 4-1 at 5-9).

As explained by the ALJ in the written determination, the ALJ rejected the opinions offered by the non-examining state agency medical consultants, who opined that there was insufficient evidence to evaluate the claim. (Dkt. 3 at 35). While noting the consultants' conclusion that the record before them contained insufficient evidence, the ALJ explained that these doctors did not have the opportunity to examine Plaintiff, nor did they have the benefit of reviewing evidence received after they conducted their own review of the file— which demonstrated that Plaintiff had several severe and non-severe impairments. (*Id.*). With respect to the opinion offered by NP Kottwitz, the ALJ explained that her opinion, which assessed that Plaintiff could not perform the minimal requirements for sedentary work, including that Plaintiff could sit for less than one hour total in an eight-hour workday, walk for less than one hour total in an eight-hour workday, stand for one hour total in an eight-hour workday, and occasionally lift/carry less than ten pounds, was not consistent with or supported by the record as a whole. (*Id.* at 35-36).

Plaintiff's argument—that the ALJ erred by rejecting these medical opinions and then assessing an RFC in the absence of them—is not supported by the law, nor is it supported by the facts of the case. As explained above, where the record contains sufficient evidence from which the ALJ can assess an RFC, a medical source statement or formal medical opinion is not necessarily required. *Monroe*, 676 F. App'x at 8. Here, the ALJ formulated an RFC after reviewing and considering the medical opinion evidence, Plaintiff's reports of his functioning, and the medical records. (Dkt. 3 at 36 (explaining

that the RFC "is supported by the clinical and diagnostic findings as well as the medical opinions of medical sources in the record," and noting that Plaintiff's "statements about his activities of daily living in the record during the period at issue also supports [the RFC] finding")); *Terrence S. B. v. Comm'r of Soc. Sec.*, No. 1:22-cv-0380 (JJM), 2024 WL 4131237, at *4 (W.D.N.Y. Sept. 10, 2024) ("[T]he ALJ was entitled to craft an RFC based upon all the evidence in the record and to reject portions of medical opinions that were in conflict with other evidence, such as treatment notes.").

For example, the written determination includes a discussion of Plaintiff's functioning during the period at issue, which demonstrated that although Plaintiff had some neuropathy in his feet, his condition was well-controlled and his physical examinations were largely normal, supporting his ability to perform light work with limitations.  (*See, e.g.*, Dkt. 3 at 34 (discussing Plaintiff's treatment records from August 2019, wherein Plaintiff had decreased sensation in the bilateral feet); *id*. (discussing treatment records from November 2019, wherein Plaintiff reported that his diabetes was mostly well-controlled, with no foot problems, and a physical examination revealed no acute findings); *id*. (discussing treatment records from December 2019, wherein Plaintiff reported no foot problems, and his physical examination was within normal limits); *id*. at 35 (discussing Plaintiff's reports of his activities of daily living, including that he could handle his personal care, dress himself, do some laundry, and perform light cleaning)).  In other words, it is clear to the Court that the ALJ considered the record as a whole, including these

reports regarding Plaintiff's functioning, when determining that Plaintiff was capable of performing light work.

Plaintiff next argues that by rejecting the opinion evidence in the record, the ALJ had a duty to develop the record with further opinion evidence, and he failed to fulfill that duty. (Dkt. 4-1 at 6). It is true that "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotations and citation omitted); *see also Vay v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 267, 272 (W.D.N.Y. 2018) ("the ALJ's duty to develop the record is not limitless," and where there are no obvious gaps in the record, the ALJ is not required to seek additional information).

Plaintiff has failed to demonstrate that the record was incomplete and required further development to assess the RFC. Aside from his argument that the ALJ created a gap in the record by rejecting the aforementioned opinion evidence, Plaintiff points to no other gaps in the record that the ALJ was obligated to fill. The administrative record before the Court is over 500 pages in length, including over 250 pages of medical records and opinions offered by multiple medical professionals. Although the ALJ did not find any of these opinions to be persuasive, the written determination makes plain that the ALJ considered them. The ALJ also considered Plaintiff's treatment records, including medical

records from Tresse Jordan, DPM, Plaintiff's podiatrist, and Danielle Kwakye-Berko, M.D., Plaintiff's primary care physician, in reaching the determination that Plaintiff was not disabled. (*See, e.g.*, Dkt. 3 at 33-35). In sum, it is clear to the Court how the ALJ arrived at the assessed RFC, which is supported by the clinical and diagnostic findings in the record. (*See id*. at 36 (discussing how the ALJ arrived at the assessed RFC)). Accordingly, remand is not required on this basis.

### B.    The Off-Task Limitation

Plaintiff's second and final argument is that the ALJ erred by assessing an off-task limitation, because the ALJ did not explain how she arrived at the off-task limitation or point to evidence in the record supporting such a limitation. (Dkt. 4-1 at 9-11). In response, the Commissioner contends that the ALJ adequately explained how she arrived at the off-task limitation. (Dkt. 6-1 at 15).

The ALJ assessed that Plaintiff would be on-task at least 90 percent of the time during an eight-hour workday (Dkt. 3 at 32)—in other words, Plaintiff would be off-task for ten percent of the time. Contrary to Plaintiff's argument, the ALJ explained why she assessed that Plaintiff would be off-task for ten percent of the time. The ALJ explained that she afforded Plaintiff such a limitation to accommodate for his distractibility, which was caused by the combination of his pain symptoms and his non-severe mental impairments. (*Id*. at 36; *see also id*. at 56 (Plaintiff's testimony that his neuropathy

medication makes him drowsy and sleepy); *id*. at 30 (ALJ's discussion that Plaintiff complained he "has limitations in concentrating generally, focusing generally, completing tasks, [and] avoiding distractions," but also noting that "the record fails to show any mention of distractibility")).

To the extent Plaintiff argues that the record lacks opinion evidence assessing that he would be off-task for ten percent of the time—and therefore any such limitations cannot be supported by substantial evidence—any such argument is misplaced.  The fact that the ALJ credited Plaintiff's complaints of pain and distractibility in the absence of opinion evidence does not require remand.  *See, e.g., Christopher G. v. Comm'r of Soc. Sec.*, No. 23-CV-0433-LJV, 2024 WL 4308311, at *3 (W.D.N.Y. Sept. 26, 2024) ("[I]t is true that there is no opinion in the record explicitly finding that Christopher would be off task ten percent of the workday; in fact, there is no opinion in the record about any sort of off-task limitation.  But the ALJ certainly did not err to Christopher's detriment by concluding that Christopher had a *more* restrictive RFC than suggested by any of the opinions in the record."); *Lesanti v. Colvin*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (rejecting the plaintiff's argument that the ALJ improperly limited Plaintiff to five percent off-task time because the limitation was not connected to any evidence in the record, noting that although there was no medical opinion supporting such a limitation, it appeared that the ALJ credited the plaintiff's testimony that she could not focus and was easily distracted, and "[t]he fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand"); *see also  Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he

fact that the ALJ's RFC assessment did not perfectly match [the consultative examiner's] opinion, and was in fact more restrictive than that opinion, is not grounds for remand.").

Plaintiff cites *Sherylrica Q. v. Comm'r of Soc. Sec.*, No. 1:21-cv-387-DB, 2023 WL 6591754 (W.D.N.Y. Oct. 10, 2023), wherein the Court remanded the case due to the ALJ's failure to explain the assessed three percent off-task time limitation, as supporting her position. (*See* Dkt. 4-1 at 10-11). *Sherylrica* is distinguishable. In that case, the ALJ did not discuss an off-task limitation in the decision at all, and it was unclear how the ALJ arrived at the three percent limitation. *Sherylrica Q.*, 2023 WL 6591754, at *3 ("[T]he ALJ did not explain how she arrived at the 3% off-task time limitation. In fact, the ALJ does not even discuss off-task time at all in the rest of the decision. Thus, the Court is unclear how the ALJ reached this specific finding in the RFC."). And in any event, even if *Sherylrica* was not distinguishable, the decision by another district judge is not precedential or controlling. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted)).

As explained above, although the record here lacks a medical opinion specifically opining that a ten percent off-task limitation is necessary, the ALJ explained in the written determination how she arrived at such a limitation, including to accommodate for Plaintiff's own reports of distractibility. Accordingly, remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 6) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 4) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 30, 2025
          Rochester, New York